UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x
                    :

ELIOT S. SASH,
                    :

         Plaintiff,
                    :        **MEMORANDUM DECISION**

   - against -
                    :        09 Civ. 450 (DC)

UNITED STATES OF AMERICA <u>et al.</u>,
                    :

         Defendants.
                    :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-22-09

**APPEARANCES:**

ELIOT S. SASH
63 Bergenline Avenue
Closter, New Jersey  07624-1651
<u>Pro Se</u> Plaintiff

PREET BHARARA, ESQ.
United States Attorney for the
Southern District of New York
    By:  David Bober, Esq.
        Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York  10007
Attorneys for the Federal Defendants

MICHAEL A. CARDOZO, ESQ.
Corporation Counsel for the City of New York
    By:  Matthew Weir, Esq.
        Assistant Corporation Counsel
100 Church Street
New York, New York  10007
Attorneys for the City Defendants

**CHIN, District Judge**

        In 2003, plaintiff <u>pro se</u> Eliot S. Sash was convicted of, <u>inter alia</u>, selling counterfeit law enforcement badges. After he completed his sentence, he commenced this action against the United States and several federal officials (the "Federal Defendants"), and several New York City officials, including the New York City Police Department ("NYPD") Property Clerk (collectively, the "City Defendants"), seeking a return of

property under Federal Rule of Criminal Procedure 41(g).  Sash's complaint also apparently asserted a claim against the City Defendants under 42 U.S.C. § 1983, arising out of the same facts underlying his 41(g) motion.

Sash argues the property -- specifically, thousands of badges, badge-making equipment, and law enforcement paraphernalia -- should be returned because it does not constitute contraband and because he was not using the property for illegitimate purposes.  Sash also argues that the City Defendants violated his constitutional rights by refusing to return the property to him.

Before the Court are motions by the Federal Defendants and the City Defendants to dismiss Sash's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the motions are granted, and the complaint is dismissed.

Defendants move for an order revoking Sash's in forma pauperis ("IFP") status in the current action and also prospectively, on the ground that Sash is a serial litigant who has abused his IFP status by filing dozens of frivolous lawsuits.  In addition, defendants seek an order requiring Sash to obtain judicial permission before filing any future lawsuits.  Defendants' motion is granted.

- 2 -

## BACKGROUND

### A.   Facts[1]

On May 10, 2001, Sash was arrested by the FBI and hundreds of badges and badge-making equipment were seized. (Compl. at 3).  The charges were later dropped.[2]

On September 4, 2002, federal and state officials executed a search warrant at Sash's home in Yonkers, New York. United States v. Sash, 396 F.3d 515, 517 (2d Cir. 2005).  The search uncovered thousands of false federal, state, and local identification documents and badges, along with the tools, computers, and printers necessary to manufacture such documents and badges.  Id.  Sash was not authorized to manufacture any of the badges or documents found.  Id.

On November 27, 2002 Sash was charged in a twenty-one count indictment with producing, and unlawfully possessing with intent to transfer, hundreds of NYPD badges and ID cards; selling counterfeit badges through the mail; and making false statements to federal customs officials.  Id.

On December 30, 2002, while free on bail, Sash was arrested in New Jersey for defrauding a K-Mart department store.

---

[1]    Sash has a lengthy criminal history, with at least eleven arrests and eight convictions, including a 2003 conviction for attempting to defraud the Social Security Administration by falsely claiming his wife had died in the September 11, 2001 attacks on the World Trade Center.  (See 11/5/03 PSR at 14-19).

[2]    None of the parties provides any information regarding Sash's 2001 arrest.

His bail was revoked, and he was charged in a superseding indictment that included charges relating to Sash's attempt to defraud K-Mart.  Id.  He later agreed to plead to an information, and pled guilty on September 30, 2003 to access device fraud and unlawful transfer of police badges.  Id. at 518.  On January 13, 2004, Judge Casey sentenced Sash to twenty-seven months in prison followed by eight years of supervised release, which was subsequently lowered to two years and nine months.  Id.  As a special condition of his supervised release, Sash was explicitly prohibited from

> possess[ing] any law-enforcement equipment,
> such as New York Police Department shields
> and badges, that [he was] not authorized to
> possess, [and] . . . possess[ing] any raw
> materials, inventory, or badge components
> that could be used to manufacture
> law-enforcement equipment that [he was] not
> authorized to manufacture.

United States v. Sash, 444 F. Supp. 2d 224, 228 (S.D.N.Y. 2006).

On March 3, 2006, after Sash completed his sentence and was subject to supervised release, Sash's Probation Officer conducted a search of his home.  Id. at 226.  That search uncovered a number of NYPD badges and shirts, which Sash was prohibited from possessing.  Id.  A subsequent search took place on March 6, 2006 and revealed, as Judge Casey later put it, "enough law-enforcement equipment to outfit a small police force."  Id. at 228.  Sash possessed, inter alia, NYPD uniforms, NYPD badges, Department of Defense badges, seals used to make FBI, Department of Justice, and Customs Service badges, and several fake handguns.  Id. at 227.

- 4 -

On March 6, 2006, the Probation Office filed a Request
for Court Action, charging Sash with two violations of supervised
release -- possessing law enforcement badges and equipment, and
lying to his Probation Officer. Sash, who denied both charges,
was arrested that same day. Id. at 225. Judge Casey held a
hearing on April 4, 2006, and on August 2, 2006 issued a
decision, concluding that Sash had committed the two violations.
Id. On September 25, 2006, Judge Casey sentenced Sash to twenty-
four months in prison and twelve months of supervised release.
United States v. Sash, 02 Cr. 1519 (S.D.N.Y. 2002) (Docket Entry
73).

## B. Procedural History

Upon his release from prison in late 2007, Sash moved,
pursuant to Federal Rule of Criminal Procedure 41(g), for the
return of his property seized in 2001, 2002, and 2006. The
property in possession of the Probation Office generally includes
law enforcement pins, tie clips, uniforms (including clothing),
money clips, badges, utility belts, DVDs, fake ammunition, fake
ammunition magazines, and fake firearms. (Merrigan Decl. Ex. A
(full catalog of items); Arce Decl. ¶ 5). The property in
possession of the NYPD Property Clerk generally includes
thousands of NYPD badges, hundreds of other badges, thousands of
molds for producing NYPD badges, police shields and shield
components, ten fake firearms, a variety of government
identification cards and identification documents, two police
vehicle identification plaques, assorted police paraphernalia,

- 5 -

business and personal records, a computer along with parts and hardware, and $869 in United States currency. (Weir Decl. Ex. C (full catalog of items)).

On October 14, 2008, Judge Kaplan, to whom Sash's criminal case had been reassigned, issued an order that Sash's 41(g) motion should, consistent with Second Circuit precedent, see Onwubiko v United States, 969 F.2d 1392, 1397 (2d Cir. 1992), be treated as a complaint in a new civil case, as the criminal proceedings were complete. In an order dated January 15, 2009, Judge Kaplan ordered that a new civil case be opened, and approved Sash's petition to proceed IFP. The case was reassigned to me the next day.

On February 5, 2009, Sash filed an amended complaint, full of elaborate conspiracy theories as to how he was "persecuted" by the City and Federal Defendants for his "legitimate" badge-making business. The complaint cast aspersions not only on the Assistant United States Attorney who prosecuted Sash, but also the late Judge Casey. (Compl. at 11 ("The Pro-Se Plaintiff appealed but the appeal was allegedly not filed due to the clandestine orders and interference of Judge Casey.")).

Liberally construed, the amended complaint appears to assert two claims: First, a claim against all defendants for the return of property pursuant to Rule 41(g); and second, a claim against the City Defendants for the violation of Sash's constitutional rights under 42 U.S.C. § 1983.

- 6 -

These motions followed, and Sash responded to both motions.

## DISCUSSION

Three principal issues are raised by the instant motions:  First, whether Sash is entitled to the return of the property in possession of the City and Federal Defendants; second, whether Sash's 1983 claim against the City Defendants can proceed; and third, whether Sash's IFP status should be revoked in this action and he should be enjoined from filing future lawsuits without judicial permission.  I address each issue in turn.

## A.  Sash's 41(g) Motion

For the reasons set forth below, Sash's motion is denied, as all the property he seeks return is contraband.

### 1.  Federal Rule of Criminal Procedure 41(g)

Federal Rule of Criminal Procedure 41(g)[3] provides as follows:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the

---

[3]    Rule 41(g) was previously designated as 41(e), and was amended without substantive change in 2002.  See Adeleke v. United States, 355 F.3d 144, 147 n.1 (2d Cir. 2004).

> property to the movant, but may impose
> reasonable conditions to protect access
> to the property and its use in later
> proceedings.

As a procedural matter, when a criminal case is closed and the
defendant moves under Rule 41(g), that motion is treated as a
civil complaint invoking the district court's equitable
jurisdiction.  See <u>Onwubiko</u>, 969 F.2d 1392, 1397 (2d Cir. 1992);
<u>Ramsden v. United States</u>, 2 F.3d 322, 324 (9th Cir. 1993).

While a Court considering a Rule 41(g) motion is, under
the plain language of the rule, required to "receive evidence on
any factual issue necessary to decide the motion," this
requirement can be satisfied by sworn affidavits, and the Court
need not hold a hearing.  See <u>United States v. Cardona-Sandoval</u>,
518 F.3d 13, 17 (1st Cir. 2008); <u>United States v. Stevens</u>, 500
F.3d 625, 629 (7th Cir. 2007).

To prevail on a Rule 41(g) motion, the moving party
"must demonstrate that (1) he is entitled to lawful possession of
the seized property; (2) the property is not contraband; and (3)
either the seizure was illegal or the government's need for the
property as evidence has ended." <u>Ferreira v. United States</u>, 354
F. Supp. 2d 406, 409 (S.D.N.Y. 2005) (internal citations and
quotations omitted).  It is not clear whether the moving party
has the burden to show that he is entitled to the property, or
whether the Government must show that the moving party is not
entitled to it.  Compare <u>Santos v. United States</u>, Nos. 04 Civ.
6716 (JFK), 2005 U.S. Dist. LEXIS 4224, at *3 (S.D.N.Y. Mar. 17,

- 8 -

2005) ("At the conclusion of a criminal proceeding, the evidentiary burden for a Rule 41(g) motion shifts to the Government because there is a presumption that the person from whom the property was allegedly taken has a right to its return.") (internal citation and quotations omitted), and United States v. Chambers, 192 F.3d 374, 377 (3d Cir. 1999) (holding that burden, on 41(g) motion, "shifts to the government when the criminal proceedings have terminated"), with United States v. Nelson, 190 Fed. Appx. 712, 715 (10th Cir. 2006) ("The defendant bears the burden of establishing under Rule 41(g) that the retention of the property by the government is unreasonable.") (internal citation and quotations omitted), and 3A Charles Alan Wright, Nancy J. King & Susan R. Klein, Federal Practice and Procedure § 67B (3d ed. 2004) ("The movant is required to show that he is entitled to lawful possession of the property.").[4] I conclude, however, that it is the moving party's burden. The moving party in these cases has been convicted of a crime, and he is the one seeking relief from the Court. It is therefore reasonable to require the movant to show that the Government is not entitled to retain any property seized.

Courts have recognized two types of contraband: Contraband per se and derivative contraband. "An object is contraband per se if its possession, without more, constitutes a crime; or in other words, if there is no legal purpose to which

---

[4]     The Second Circuit has not addressed this issue.

- 9 -

the object could be put." <u>United States v. Harrell</u>, 530 F.3d 1051, 1057 (9th Cir. 2008). A controlled substance, for example, is contraband per se, and courts will not "entertain a claim contesting the confiscation of contraband per se because one cannot have a property right in that which is not subject to legal possession." <u>Cooper v. Greenwood</u>, 904 F.2d 302, 305 (5th Cir. 1990).

The concept of derivative contraband is more expansive, and includes "things that are not ordinarily illegal, like guns, automobiles, ships, and currency, that become forfeitable because of their relationship with a criminal act." <u>United States v. 37.29 Pounds of Semi-Precious Stones</u>, 7 F.3d 480, 485 (6th Cir. 1993); <u>accord</u> <u>Vitrano v. United States</u>, No. 06 Civ. 6518 (JCF), 2009 WL 1011582, at *5 (S.D.N.Y. Apr. 14, 2009) (derivative contraband includes "items which are not inherently unlawful but which may become unlawful because of the use to which they are put"). For example, in <u>United States v. Pascucci</u>, the Ninth Circuit affirmed the district court's denial of a 41(e) motion where a defendant convicted of extortion sought to have returned a typewriter, tapes, and photographs that were used as part of the crime. Nos. 92-10440, 92-10698, 1993 U.S. App. LEXIS 20241, at **3-4 (9th Cir. Aug. 4, 1993). The Ninth Circuit concluded that "[a]lthough the confiscated property was not inherently illegal, the property constituted 'derivative contraband' based upon [defendant's] illegal usage." <u>Id.</u> at *4.

- 10 -

## 2.  **Application**

Here, I conclude that Sash has not met his burden of proving that he is entitled to the return of the property. Accordingly, the motion is denied.

Sash was convicted of unlawful transfer of badges and ID cards, and now seeks the return of the very badges and identification cards that formed the basis of his conviction, as well as the equipment he used to illegally manufacture the badges and identification cards.  The badges and identifications themselves are contraband per se, as it is illegal for Sash to manufacture them under federal, state, and local law.  See 18 U.S.C. § 1028(a), N.Y. Penal Law §§ 170.25, 170.40, and N.Y.C. Admin. Code § 14-107.

The remaining items are derivative contraband, as they were used by Sash for unlawful purposes -- namely, impersonating law enforcement officers, manufacturing or creating unauthorized badges and identifications, and selling false identification and badges.  The DVDs were seized as part of Sash's scheme to defraud K-Mart.  (9/18/09 Gov't Ltr.).  As to the money Sash seeks returned, it would also appear to be derivative contraband, i.e., the proceeds of Sash's illegal badge-selling business.[5]  Sash has

---

[5]      Though not addressed by any of the defendants, the Court notes that when Judge Casey sentenced Sash in 2004, he also imposed restitution in the amount of $2,000.  It appears from a review of the docket that Sash has only paid $200 of the $2,000 imposed.  To the extent that restitution is still outstanding, the $869 should be applied to it.

not, in any event, met his burden of showing the money was not
the proceeds of his crime.

The Court will not order property returned to Sash so
that he can continue to violate the law. As the Eighth Circuit
has held, it "makes scant sense to return to a convicted drug
dealer the tainted tools used or intended to be used in his
illegal trade when the same were lawfully seized." United States
v. Felici, 208 F.3d 667, 671 (8th Cir. 2000). So, too, here.
Accordingly, he has no right to the return of any of these
items.[6]

Sash appears to advance two arguments in support of his
motion, both of which are rejected.

First, Sash appears to argue that he was legally
entitled to possession of the badges and uniforms. Judge Casey
has already addressed this argument and rejected it, concluding
that it "strains credulity on numerous fronts." Sash, 444 F.
Supp. 2d at 229. This issue will not be relitigated now.

Second, he appears to argue that, because the
defendants have not commenced forfeiture proceedings against
Sash's property, they have no defense to his 41(g) motion. This
argument is meritless. There is no requirement that the

---

[6]     In his April 4, 2009 letter, Sash also claims that he
has obtained a release from Assistant United States Attorney
Harry Chernoff authorizing the NYPD Property Clerk to release
certain -- unspecified -- property to Sash. To the extent that
such a release exists, Sash may present it to the City Defendants
and they shall release the specified property to Sash within ten
days after presentment of the release.

- 12 -

government seek to forfeit Sash's property, and its decision not to do so does not "prevent the government from being able to assert, in resistance to a Rule 41(e) motion, a limited derivative contraband theory." <u>United States v. Felici</u>, 208 F.3d 667, 671 (8th Cir. 2000).

For these reasons, the motions to dismiss Sash's 41(g) claim are granted.

## B. <u>Sash's 1983 Claim</u>

Sash's complaint asserts a claim under 42 U.S.C. § 1983 for violation of his Fourth Amendment right. Because Sash's claim arises out of an alleged deprivation of his property, his claim is more appropriately considered under the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 531 (1984).

To succeed on a claim for deprivation of property without due process of law, "a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." <u>Local 342, Long Island Pub. Serv. Employees v. Town Bd.</u>, 31 F.3d 1191, 1194 (2d Cir. 1994) (internal citation and quotations omitted).

To satisfy the first element, Sash must prove that he had a protected interest in the property. <u>See</u> <u>Grossman v. Axelrod</u>, 646 F.2d 768, 771 (2d Cir. 1981) (holding that "a valid liberty or property interest is an essential prerequisite to the

successful assertion of due process rights").  The law is clear, however, that a plaintiff cannot have a legally protected interest in contraband.  See Vitrano v. United States, 06 Civ. 6518 (JCF), 2009 U.S. Dist. LEXIS 32550, at *16 (S.D.N.Y. Apr. 14, 2009) ("'[S]ociety recognizes no legitimate property interest in contraband.'") (quoting Matter of Search Warrant for Premises Located at 233 J.B. Wise Place, Misc. No. 1469, 1987 U.S. Dist. LEXIS 10890, at *4 (N.D.N.Y. Nov. 23, 1987)); United States v. Goodwin, 449 F.3d 766, 770 (7th Cir. 2006) (no legally protected interest in contraband).  As discussed above, the property Sash seeks returned is contraband.  Because he does not have a protected interest in the contraband, defendants' allegedly unlawful possession of the property cannot give rise to a 1983 claim.  Accordingly, Sash's 1983 claim is dismissed.

C.   **Defendants' Request for an Injunction and Revocation of Sash's IFP Status**

        Defendants seek to have Sash's IFP status revoked in this action and prospectively, and to enjoin Sash from filing future lawsuits without permission of the Court.  The basis for defendants' request is Sash's history of filing frivolous lawsuits.

        For the reasons that follow, Sash's IFP status is revoked in this action and prospectively, and Sash is hereby enjoined from filing any further lawsuits in federal court without first obtaining judicial permission.

- 14 -

## 1. Sash's History of Litigiousness

Sash has been dubbed a "frequent filer in the federal courts in this Circuit." Sash v. Laird, No. 06 Civ. 6052 (LB), 2008 WL 2816019 at *1 (E.D.N.Y. July 21, 2008). In the past five years, Sash has been the plaintiff in at least twenty-four different cases, in this and other districts, the vast majority of which have been dismissed. Some of Sash's cases include the following: Sash v. Rosahn, 08 Civ. 4032 (BSJ) (S.D.N.Y. 2008) (suing Legal Aid for malpractice -- summary judgment granted); Garland-Sash v. United States, 08 Civ. 3609 (D.N.J. 2008) (motion to dismiss pending); Sash v. Plumer, 07 Civ. 5536 (SHS) (S.D.N.Y. 2007) (suing probation officer for alleged errors in his PSR -- motion to dismiss granted); Sash v. Parks, 06 Civ. 4218 (MBM) (S.D.N.Y. 2006) (seeking money damages from the Bureau of Prisons and various federal defendants -- motion to dismiss granted); Sash v. Laird, 06 Civ. 6052 (LB) (E.D.N.Y. 2006) (habeas corpus -- dismissed for lack of jurisdiction; certificate of appealibility denied); Sash v. Bureau of Prisons, 06 Civ. 5908 (ENV) (E.D.N.Y. 2006) (alleging that prison officials wrongfully seized religious paraphernalia -- dismissed as moot); Sash v. Zenk, 05 Civ. 3542 (LAK) (S.D.N.Y. 2005) (habeas action alleging violation of Interstate Agreement on Detainers and ineffective assistance of counsel -- dismissed as "meritless"); Sash v. City of New York, 05 Civ. 1544 (DAB) (S.D.N.Y. 2005) (seeking $150 million from New York City and various municipal defendants for, inter alia, false arrest, libel and slander -- motion to dismiss

- 15 -

granted); <u>Sash v. Dudley</u>, 05 Civ. 7498 (SAS) (S.D.N.Y. 2005) (seeking $55 million from former attorney for alleged legal malpractice -- dismissed on summary judgment); <u>Sash v. Callahan</u>, 05 Civ. 8798 (CM) (S.D.N.Y. 2005) (seeking $35 million for tort and contract claims -- dismissed for lack of subject matter jurisdiction); <u>Garland-Sash v. Stutz</u>, 05 Civ. 4207 (ENV) (E.D.N.Y. 2005) (seeking over $25 million from former attorney for legal malpractice -- dismissed as time-barred); <u>Sash v. New York State Division of Parole</u>, 05 Civ. 231 (NGG) (E.D.N.Y. 2005) (challenging location of imprisonment -- dismissed for failure to prosecute); <u>Sash v. Schwartz</u>, 04 Civ. 9634 (DC) (S.D.N.Y. 2004) (suing former attorney for malpractice -- dismissed on summary judgment); <u>Sash v. Zenck</u>, 04 Civ. 2503 (ENV) (E.D.N.Y. 2004) (habeas corpus action dismissed as not cognizable on habeas review); <u>Sash v. Zenck</u>, 04 Civ. 2476 (NGG) (E.D.N.Y. 2004) (mandamus action seeking to compel BOP to recalculate credit toward service of sentence -- dismissed as moot); <u>Sash v. Fed. Bureau of Prisons</u>, 04 Civ. 2106 (ENV) (E.D.N.Y. 2004) (variety of tort claims, including denial of medication and denial of visitation -- dismissed on a variety of grounds); <u>Sash v. City of New York, et al.</u>, 04 Civ. 976 (ENV) (E.D.N.Y. 2004) (suing thirty-eight named defendants and twenty-five unnamed defendants for various constitutional violations -- motion to dismiss granted); <u>Sash v. Clinton County, et al.</u>, 03 Civ. 1321 (TJM) (N.D.N.Y. 2003) (coram nobis -- dismissed for attempting to circumvent habeas corpus remedy).

One of Sash's legal filings merits particular attention. In 2006, after pleading guilty before Judge Casey, Sash filed a motion seeking over $100,000 in attorneys' fees and expenses pursuant to the Hyde Amendment, which permits a "prevailing party" in a criminal case to recoup attorneys' fees and expenses "where the court finds that the position of the United States was vexatious, frivolous, or in bad faith." Pub.L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), reprinted in 18 U.S.C. § 3006. Judge Casey denied the motion, concluding that the government's position "was not only not 'vexatious, frivolous, or in bad faith,' it was both justified and successful." United States v. Sash, No. 02 Cr. 1519 (RCC), 2006 WL 156475, at *2 (S.D.N.Y. Jan. 18, 2006). Judge Casey also noted that "Sash may very well be the first criminal defendant in the limited history of the Hyde Amendment to seek damages following a prosecution in which he was convicted, and is almost certainly the first to seek such following a conviction based upon a guilty plea." Id.

When his cases have been dismissed, Sash has regularly appealed, despite district courts' express finding that an appeal would not be in good faith. For example, in Sash v. Parks, then-Chief Judge Mukasey dismissed Sash's complaint and certified, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Court's dismissal order would not be taken in good faith. 06 Civ. 4218 (MBM) (S.D.N.Y. 2006) (Docket Entry 3). Sash nevertheless appealed, and the Second Circuit dismissed the appeal, concluding that Sash's appeal "lack[ed] an arguable basis

- 17 -

in fact or law." _Id._ (Docket Entry 6).[7] Similarly, in _Sash v. Clinton County et al._, Judge McAvoy declined to issue a certificate of appealability, but Sash appealed. No. 03 Civ. 1321 (TJM) (N.D.N.Y. 2003). The Second Circuit dismissed, once again concluding that Sash's appeal lacked an arguable basis in law or fact. _Sash v. Parks_, No. 06-3602-CV (2d Cir. 2006).

## 2. Applicable Law on a Filing Injunction

The ability to proceed IFP "is not a constitutional right, but rather a congressionally created benefit." _Polanco v. Hopkins_, 510 F.3d 152, 156 (2d Cir. 2007). The Second Circuit has held that a district court not only has the authority, but also an obligation, to deny this benefit to a litigant who has demonstrated a history of filing frivolous and vexatious claims. _See In re Martin-Trigona_, 737 F.2d 1254, 1261 (2d Cir. 1984) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."); _accord Hurt v. Soc. Sec. Admin._, 544 F.3d 308, 310, (D.C. Cir. 2008) (revoking plaintiff's IFP status after finding "the number, content, frequency, and disposition" of filings to show "abusive pattern, aimed at taking advantage of the IFP privilege").

---

[7]     As a matter of law, a complaint that "lacks an arguable basis either in law or in fact" is frivolous. _Neitzke v. Williams_, 490 U.S. 319, 325 (1989).

In Safir v. United States Lines, Inc., the Second
Circuit set forth five factors for courts to consider in
determining whether to revoke a litigant's IFP status:

> (1) the litigant's history of litigation and
> in particular whether it entailed vexatious,
> harassing or duplicative lawsuits; (2) the
> litigant's motive in pursuing the litigation,
> e.g., does the litigant have an objective
> good faith expectation of prevailing?; (3)
> whether the litigant is represented by
> counsel; (4) whether the litigant has caused
> needless expense to other parties or has
> posed an unnecessary burden on the courts and
> their personnel; and (5) whether other
> sanctions would be adequate to protect the
> courts and other parties.

792 F.2d 19, 24 (2d Cir. 1986).

## 2. Application

Based on the factors set forth by the Second Circuit in
Safir, I conclude that an injunction is warranted.

As to the first factor, Sash's history of litigation,
set forth above, clearly weighs in favor of an injunction.  It
appears, for example, that every time Sash has been arrested he
has sued the arresting officers, and every time he has been
represented by counsel he has sued his attorney for malpractice.
Moreover, Sash has evidenced a willful disregard for the judicial
process by appealing even where he has not been told that an
appeal would not be in good faith.

The second factor also weighs in favor of an
injunction.  Sash could not have a reasonable belief that he

- 19 -

would prevail in the actions described above, many of which seek millions and millions of dollars in damages arising out of perceived slights or conspiracy theories.

Sash is not represented by counsel, which also weighs in favor of an injunction.

The fourth factor is perhaps the strongest reason to enjoin Sash from future IFP filings. Sash's litigiousness has serious consequences, as it imposes an immeasurable burden on the defendants he sues and the judicial system. Each frivolous lawsuit Sash files requires government attorneys to devote finite resources to defending it, and the judicial system is similarly taxed. Moreover, every minute spent by government attorneys and the judicial system on Sash's frivolous claims is a minute not spent on potentially meritorious cases. Enough is enough.

The fifth factor similarly weighs in favor of an injunction. In a case before Judge Stein, the Federal Defendants moved to dismiss Sash's complaint and for a filing injunction. Sash v. Plummer, 07 Civ. 5536 (SHS) (S.D.N.Y. 2007). Judge Stein granted the motion to dismiss but denied the motion for an injunction, concluding that the dismissal of Sash's complaint itself "may suffice to eliminate future frivolous or malicious filings" by Sash. (Id. docket entry 18). Since Judge Stein's decision, Sash has filed two new lawsuits and commenced two new appeals. He has not learned his lesson, and it is clear that no number of dismissals will deter his litigiousness.

- 20 -

Sash's only argument against an injunction is that res judicata bars the Government from seeking it, on the ground that Judge Stein has previously denied the same motion.  Res judicata bars relitigation of a claim based on a prior decision if that prior decision was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  EDP Med. Computer Sys. v. United States, 480 F.3d 621, 625 (2d Cir. 2007).  Here, Sash has filed four lawsuits or appeals since Judge Stein issued his decision, and thus this case cannot be said to involve the same cause of action.

For these reasons, the request for an injunction is granted.  Sash's IFP status is hereby revoked in this action[8] and prospectively.  Sash will not be able to proceed IFP in any future lawsuits in this or any other federal court in the country.  In addition, Sash shall, prior to filing any future lawsuit in federal court, first obtain judicial permission to do so.  In seeking such permission, Sash shall provide a copy of this decision along with his proposed complaint.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are granted, and the complaint is dismissed, with prejudice.  Sash's

---

[8]     Because I have dismissed the complaint, Sash need not pay the filing fee to the District Court.  If Sash chooses to appeal, however, he will have to pay the filing fee for his appeal.

IFP status is revoked in this action and prospectively.  Sash is prohibited from filing any future lawsuits without judicial permission.  The Clerk of Court is directed to enter judgment accordingly and to close the case.

I hereby certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this decision would not be taken in good faith.

SO ORDERED.

Dated:    New York, New York
          September 22, 2009

                                    DENNY CHIN
                                    United States District Judge

- 22 -